| | |
|---|---|
| PAUL FREE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DR. NADER PEIKAR, et al.,<br><br>　　　　　　Defendants. | 1:17-cv-00159 MJS (PC)<br><br>**ORDER**<br><br>　**(1) REINSTATING DISMISSED CLAIMS;**<br><br>　**(2) DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE TO THIS CASE; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS**<br><br>**(ECF No. 11)**<br><br>**FOURTEEN-DAY DEADLINE** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a federal prisoner proceeding pro se in a civil rights action pursuant to Bivens vs. Six Unknown Agents, 403 U.S. 388 (1971).  Plaintiff has consented to the jurisdiction of a magistrate judge. (ECF No. 5.) Defendants have appeared but have not consented to Magistrate Judge jurisdiction.

On May 23, 2017, Plaintiff's First Amended Complaint was screened and found to state a cognizable Eighth Amendment medical indifference claim against Defendants Dr. Peikar, Ms. Mettri, Ms. Fuentes-Arce, and Mr. Tyson. Plaintiff's separate claim of medical indifference against Ms. Fuentes-Arce for "personally participat[ing] in denying [Plaintiff] treatment" was dismissed. Also dismissed were Plaintiff's other claims - a

1

conspiracy claim, a denial of access to court claim, a claim based on the processing of his inmate appeal, and lastly, state law claims for intentional infliction of emotional and physical distress. This case has proceeded on Plaintiff's cognizable claims

I.  **Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King,  875 F.3d 500 (9th Cir. Nov. 9, 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a case or claims with prejudice during screening even if the Plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the First Amended Complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

II.  **Findings and Recommendations on First Amended Complaint**

    **A.**    **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee,

2

or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### C. Plaintiff's Allegations

At all times relevant to this action, Plaintiff was a federal inmate housed at United States Penitentiary in Atwater, California ("USP-Atwater"). He names as Defendants Dr. Nader Peikar; Hospital Administrator Lourdes Mettri; Associate Hospital Administrator Lisa Fuentes-Arce; and Unit Manager Mr. Tyson. Defendants are sued in their individual

3

and official capacities.

Plaintiff's allegations may be fairly summarized as follows:

On January 10, 2014, Dr. Berry, a dermatologist at the Center for Dermatology and Cosmetic Surgery in Merced, California, diagnosed Plaintiff with basal cell carcinomas ("BCC") on his right ear and recommended immediate treatment.

Despite Dr. Berry's recommendation, Dr. Peikar, Plaintiff's treating physician, and Ms. Mettri, who was responsible for approving medical procedures recommended by professionals, delayed treatment for over two years, telling Plaintiff to "be patient" and repeatedly (and presumably falsely) informing him that he was scheduled for treatment at Dr. Berry's clinic. These Defendants were aware that the cancer on Plaintiff's ear was "increasingly painful" and that it "oozed a discharge," and Plaintiff repeatedly asked them for treatment. Their failure to provide any treatment during the two-year period resulted in severe pain as the cancer spread. Finally, on March 8, 2016, Plaintiff received surgery upon the order of another doctor who replaced Dr. Peikar. Because of the two year delay, though, the cancer spread internally and laterally, requiring extensive surgery that left "a horrible disfigurement" and partial loss of hearing and balance.

Plaintiff's bare claim against Ms. Fuentes-Arce is that she too denied treatment and, as a member of the Utilizations Committee, voted against treating Plaintiff's BCC.

Plaintiff's claim against Mr. Tyson is two-fold. First, Mr. Tyson, as a member of the Utilizations Committee, also voted against treating Plaintiff's BCC. This Defendant also improperly processed Plaintiff's administrative grievance regarding his BCC treatment and told Plaintiff that money damages were not available in the grievance process.

Lastly, Plaintiff claims, without elaboration, that the Defendants conspired to violate his rights.

He brings suit for deliberate indifference to his medical needs, intentional infliction of physical and emotional distress, and conspiracy. He seeks declaratory relief, reconstructive surgery, and compensatory and punitive damages.

### D. Discussion

#### 1. Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). However, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204 (2007).

The Supreme Court has identified only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, at 1859. These circumstances are as follows: (1) the "administrative procedure ... operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme...[is] so opaque that it becomes, practically speaking, incapable of use ... so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross, 136 S. Ct. at 1856-57.

In the Ninth Circuit, dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc). The only exception is "[i]n the rare event that a failure to exhaust is clear on the face of the complaint." Id. at 1166 (authorizing defendant to move

for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)); see also Jones, 549 U.S. at 215 (exhaustion is not a pleading requirement but an affirmative defense that, if apparent on the face of the complaint, may support dismissal); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies."), overruled on other grounds by Albino, supra, 747 F.3d at 1166; Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) ("Because Vaden did not exhaust his administrative remedies prior to sending his complaint to the district court, the district court must dismiss his suit without prejudice.") (citing Wyatt, 315 F.3d at 1120).

Plaintiff admits in the First Amended Complaint that he did not exhaust his administrative remedies. First Am. Compl. at 2. Although he filed a grievance, he attributes his failure to exhaust to Mr. Tyson's improper processing of Plaintiff's grievance, "making the administrative remedy process effectively unavailable." Id.

As noted supra, the Court is authorized to dismiss this case for Plaintiff's admission that he did not exhaust his administrative remedies. See Albino, 747 F.3d at 1166. The undersigned declines to do so at this time in light of Plaintiff's claim that Mr. Tyson misinformed Plaintiff regarding the necessity of pursuing his grievance since money damages were unavailable to him. In the event that Defendants move for summary judgment for failure to exhaust administrative remedies, Plaintiff is forewarned that he must submit sufficient argument and evidence to show that, as relevant here, "prison administrators thwart[ed him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1856-57.

### 2. Eighth Amendment Medical Indifference

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v.

Gamble, 429 U.S. 97, 102 (1976).

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

A claim of medical indifference requires: 1) a serious medical need, and 2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id.; see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

The deliberate indifference standard is met by showing: a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and b) harm caused by the indifference. Id. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. McGuckin,

7

974 F.2d at 1060 (internal quotation marks omitted); See also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060.

Plaintiff has adequately alleged that Defendants Dr. Peikar and Ms. Mettri were aware of Plaintiff's cancer and Dr. Berry's recommendation for immediate treatment. Nonetheless, they repeatedly delayed treatment for over two years, leading to further pain, the spread of the cancer, and a disfiguring surgery and partial loss of hearing. These allegations are sufficient to proceed against these Defendants.

Insofar as Plaintiff seeks to impose liability on Ms. Fuentes-Arce for "personally participat[ing] in denying [him] treatment," First Am. Compl. at 5, his allegations are far too bare and conclusory to state a claim.

Ms. Fuentes-Arce is also accused, along with Mr. Tyson, of deliberate indifference based on their votes as members of the Utilizations Committee to deny treatment for Plaintiff's BCC. Construing the facts in Plaintiff's favor, the Court finds these allegations sufficient to proceed since it is alleged that the Defendants, who are a hospital administrator and a Unit Manager, respectively, deliberately interfered with a medical specialist's recommendation for treatment. See Snow v. McDaniel, 681 F.3d 978, 986 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014).

### 3. Conspiracy

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983, and it

does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989). However, "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1302 (9th Cir. 1999). Therefore, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id. at 1301.

Plaintiff's conspiracy claim lacks specificity. It is based solely on Plaintiff's speculation and lacks a factual basis. Accordingly, it should be dismissed.

### 4. Inmate Appeal Process

Plaintiff's claim against Mr. Tyson concerns this Defendant's responses to Plaintiff's administrative grievance, but a Defendant's actions in responding to an inmate appeal, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10. Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under

section 1983. Buckley, 997 F.2d at 495.

Notably, Plaintiff does not claim that Mr. Tyson had the authority and opportunity to order treatment for Plaintiff's BCC. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); Grant v. Cate, 2016 WL 7116714, at *8 (E.D. Cal. Dec. 7, 2016) ("[A]n individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it.") (citing Jett) Plaintiff's pleading, in fact, suggests that Mr. Tyson's involvement in the processing of Plaintiff's inmate appeal began on or around August 2016, well after the March 2016 surgery to remove the BCC.

For these reasons, Plaintiff's allegations against Mr. Tyson as related to the inmate appeals process are insufficient to state a claim.

### 5. Access to Courts

The right of access to court is limited to interference with direct criminal appeals, habeas petitions, and civil rights actions, not inmate grievances. See Lewis v. Casey, 518 U.S. 343, 354 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 413-15 (2002). For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-14), overruled on other grounds by Hust v. Phillips, 555 U.S. 1150 (2009).

To have standing to bring this claim, Plaintiff must allege he suffered an actual injury. Lewis, 518 U.S. at 351-52; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). To succeed, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous claim attacking a conviction, sentence, or conditions of confinement.

Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 353 & n.3. Plaintiff need not show that he would have been successful on the merits of his claims, but only that the claims were not frivolous. Allen v. Sakai, 48 F.3d 1082, 1085-86 & n.12 (9th Cir. 1994).

To the extent Plaintiff's First Amended Complaint can be construed as bringing a claim against Mr. Tyson for violating Plaintiff's right of access to the courts, the claim is premature since Plaintiff has not alleged actual injury. That is, Plaintiff has not yet been denied an opportunity to bring the claims asserted in this action as a result of Mr. Tyson's conduct. Accordingly, any access of court claim asserted against Mr. Tyson should be dismissed for failure to state a claim.

### 6. Intentional Infliction of Emotional and Physical Distress

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979). Conduct is outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. The distress inflicted must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970) (citation omitted). The courts have jurisdiction in California "to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as...infliction of emotional distress." Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal. 3d 287, 304-05 (1988).

Plaintiff's claim for "intentional infliction of physical distress" is construed as a battery. Under California law, a plaintiff must show the following for a battery: (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Tekle v. U.S., 511 F.3d 839, 855

11

(9th Cir. 2007) (citation and quotations omitted).

For each of these claims, Plaintiff is required to not only comply with but also plead compliance with California's Government Claims Act ("GCA"). Pursuant to the CGA, a party seeking to recover money damages from a public entity or its employees must present a claim to the California Victim Compensation and Government Claims Board before filing suit in court, generally no later than six months after the cause of action accrues. See Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Timely claim presentation is not merely a procedural requirement of the GCA, but is an element of a plaintiff's cause of action. Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007). Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. Id. This requirement applies in federal court. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Because Plaintiff's pleading does not allege compliance with the GCA's claim presentation requirement, his claims for intentional infliction of emotional distress and battery should be dismissed.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The claims dismissed in the Court's screening order (ECF No. 12) are reinstated; and
2. The Clerk of Court is directed to assign a district judge to this case; and

Furthermore, IT IS HEREBY RECOMMENDED that:

1. Plaintiff proceed on his Eighth Amendment medical indifference claim against Defendants Dr. Peikar, Ms. Mettri, Ms. Fuentes-Arce, and Mr. Tyson; and
2. All other claims be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and

12

Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   January 9, 2018                    /s/ *Michael J. Seng*
                                            UNITED STATES MAGISTRATE JUDGE