| | |
|---|---|
| PAUL FREE,<br><br>                Plaintiff,<br><br>    v.<br><br>DR. NADER PEIKAR, et al.,<br><br>                Defendants. | 1:17-cv-00159 MJS (PC)<br><br>**ORDER VACATING FINDINGS AND RECOMMENDATIONS**<br><br>(ECF No. 21)<br><br>**REVISED FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS**<br><br>(ECF No. 11)<br><br>**FOURTEEN (14) DAY DEADLINE** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a federal prisoner proceeding pro se in a civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971). Plaintiff, who has paid the filing fee in full, has consented to the jurisdiction of a magistrate judge. (ECF No. 5.) Defendants have appeared but have not indicated if they consent to Magistrate Judge jurisdiction.

On January 10, 2018, the undersigned issued findings and recommendations to dismiss certain claims. (ECF No. 21.) Upon review, the undersigned concludes that the findings and recommendations contained an error and are also incomplete. Accordingly, the undersigned will vacate the findings and recommendations and issues these revised findings and recommendations.

1

## I. Procedural History

On May 23, 2017, the undersigned screened Plaintiff's first amended complaint and determined that it states an Eighth Amendment medical indifference claim against Defendants Peikar, Mettri, Fuentes-Arce, and Tyson. (ECF No. 12.) The remaining claims were not cognizable as pled. Plaintiff was ordered to file an amended complaint curing noted deficiencies or to notify the Court of his willingness to proceed only on the cognizable claims. (Id.) On June 9, 2017, Plaintiff responded, stating his willingness to proceed only on the cognizable claims. (ECF No. 13.) He then was ordered to serve Defendants. (ECF No. 14.) Although the service order stated that Plaintiff's non-cognizable claims had been dismissed (ECF No. 14), the Court's prior screening was unclear in this regard (see ECF No. 12). At most, the claims had been dismissed with leave to amend. Nonetheless, the matter proceeded as though the non-cognizable claims had been dismissed with prejudice.

Peikar, Fuentes-Arce, and Tyson appeared in the action and answered the complaint.[1] (ECF No. 16.) They since have filed a motion for summary judgment for failure to exhaust administrative remedies, which remains pending. (ECF No. 19.)

## II. <u>Williams v. King</u>

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. Nov. 9, 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a case or claims with prejudice during screening even if the Plaintiff has consented to Magistrate Judge jurisdiction. Id.

---

[1] Mettri has not appeared. Plaintiff will be required in a separate order to show cause why Mettri should not be dismissed. See Fed. R. Civ. P. 4(m).

Based on the foregoing, any final and dispositive determination regarding the cognizability of Plaintiff's claims must be presented to the district judge. Accordingly, the Court issues these findings and recommendations to address Plaintiff's non-cognizable claims.

### III. Revised Findings and Recommendations on First Amended Complaint

#### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

#### B. Pleading Standard

"Actions under [42 U.S.C.] § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim under Bivens, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. See Van Strum, 940 F.2d at 409.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### C. Plaintiff's Allegations

At all times relevant to this action, Plaintiff was a federal inmate housed at United States Penitentiary in Atwater, California ("USP-Atwater"). He names as Defendants Dr. Nader Peikar; Hospital Administrator Lourdes Mettri; Associate Hospital Administrator Lisa Fuentes-Arce; and Unit Manager Mr. Tyson. Defendants are sued in their individual and official capacities.

Plaintiff's allegations may be fairly summarized as follows:

On January 10, 2014, Dr. Berry, a dermatologist at the Center for Dermatology and Cosmetic Surgery in Merced, California, diagnosed Plaintiff with basal cell carcinomas ("BCC") on his right ear and recommended immediate treatment.

Despite Dr. Berry's recommendation, Dr. Peikar, Plaintiff's treating physician, and Ms. Mettri, who was responsible for approving medical procedures recommended by professionals, delayed treatment for over two years, telling Plaintiff to "be patient" and repeatedly (and presumably falsely) informing him that he was scheduled for treatment at Dr. Berry's clinic. These Defendants were aware that the cancer on Plaintiff's ear was "increasingly painful" and "oozed a discharge," and Plaintiff repeatedly asked them for treatment. Their failure to provide any treatment during the two-year period resulted in severe pain as the cancer spread. Finally, on March 8, 2016, Plaintiff underwent surgery on the order of a doctor who replaced Dr. Peikar. Because of the two year delay, the cancer had spread internally and laterally, necessitating extensive surgery that left "a horrible disfigurement" and partial loss of hearing and balance.

Plaintiff's bare claim against Ms. Fuentes-Arce is that she too denied treatment and, as a member of the Utilizations Committee, voted against treating Plaintiff's BCC.

4

Plaintiff's claim against Mr. Tyson is two-fold. First, Mr. Tyson, as a member of the Utilizations Committee, also voted against treating Plaintiff's BCC. This Defendant also improperly processed Plaintiff's administrative grievance regarding his BCC treatment, and told Plaintiff that money damages were not available in the grievance process.

Lastly, Plaintiff claims, without elaboration, that the Defendants conspired to violate his rights.

He brings suit for deliberate indifference to his medical needs, intentional infliction of physical and emotional distress, and conspiracy. He seeks declaratory relief, reconstructive surgery, and compensatory and punitive damages.

### D. Analysis

#### 1. Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). However, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204 (2007).

The Supreme Court has identified only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, at 1859. These circumstances are as follows: (1) the "administrative procedure ... operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme...[is] so opaque that it becomes, practically speaking, incapable of use ... so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these

5

1  circumstances demonstrating the unavailability of an administrative remedy, the
2  mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which
3  "means a court may not excuse a failure to exhaust, even to take [special] circumstances
4  into account." Ross, 136 S. Ct. at 1856-57.

5  In the Ninth Circuit, dismissal of a prisoner civil rights action for failure to exhaust
6  administrative remedies must generally be decided pursuant to a motion for summary
7  judgment under Rule 56, Federal Rules of Civil Procedure. Albino v. Baca, 747 F.3d
8  1162 (9th Cir. 2014) (en banc). The only exception is "[i]n the rare event that a failure to
9  exhaust is clear on the face of the complaint." Id. at 1166 (authorizing defendant to move
10 for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)); see also Jones, 549 U.S. at 215
11 (exhaustion is not a pleading requirement but an affirmative defense that, if apparent on
12 the face of the complaint, may support dismissal); Wyatt v. Terhune, 315 F.3d 1108,
13 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid ground for
14 dismissal, so long as no exception to exhaustion applies."), *overruled on other grounds*
15 *by* Albino, supra, 747 F.3d at 1166; Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir.
16 2006) ("Because Vaden did not exhaust his administrative remedies prior to sending his
17 complaint to the district court, the district court must dismiss his suit without prejudice.")
18 (citing Wyatt, 315 F.3d at 1120).

19 Plaintiff admits in the first amended complaint that he did not exhaust his
20 administrative remedies. First Am. Compl. at 2. Although he filed a grievance, he
21 attributes his failure to exhaust to Mr. Tyson's improper processing of Plaintiff's
22 grievance, "making the administrative remedy process effectively unavailable." Id.

23 As noted supra, the Court is authorized to dismiss this case for Plaintiff's
24 admission that he did not exhaust his administrative remedies. See Albino, 747 F.3d at
25 1166. The undersigned declines to do so at the screening stage in light of Plaintiff's
26 claim that Mr. Tyson misinformed Plaintiff regarding the necessity of pursuing his
27 grievance.[2]

---

28 [2] The parties have presented additional arguments regarding exhaustion on the motion for summary

6

## 2. Eighth Amendment Medical Indifference

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

A claim of medical indifference requires: 1) a serious medical need, and 2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id.; see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

The deliberate indifference standard is met by showing: a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and b) harm caused by the indifference. Id. "Deliberate indifference is a high legal standard." Toguchi v. Chung,

---

judgment now pending in this Court. They will be addressed in separate findings and recommendations. The conclusion herein is simply to the effect that the Complaint's allegations are facially sufficient to proceed past screening.

7

391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. McGuckin, 974 F.2d at 1060 (internal quotation marks omitted); See also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060.

Plaintiff has alleged that Defendants Dr. Peikar and Ms. Mettri were aware of Plaintiff's cancer and Dr. Berry's recommendation for immediate treatment and nevertheless delayed treatment for over two years, casuing further pain, spread of the cancer, a disfiguring surgery, and partial loss of hearing. These allegations are sufficient to proceed against these Defendants.

Insofar as Plaintiff seeks to impose liability on Ms. Fuentes-Arce for "personally participat[ing] in denying [him] treatment," First Am. Compl. at 5, his allegations are too bare and conclusory to state a claim.

Ms. Fuentes-Arce is also accused, along with Mr. Tyson, of deliberate indifference for voting as members of the Utilizations Committee to deny treatment for Plaintiff's BCC. Construing such allegations in Plaintiff's favor, the Court finds them sufficient to proceed; the Defendants, a hospital administrator and a Unit Manager, respectively, are claimed to have deliberately interfered with a medical specialist's recommendation for

treatment. See Snow v. McDaniel, 681 F.3d 978, 986 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014).

### 3. First Amendment Retaliation

Plaintiff's first amended complaint makes passing reference to a claim of retaliation. (ECF No. 11 at 5, 9.) This claim was not addressed on screening Plaintiff's complaint. Nonetheless, Plaintiff raises the issue of retaliation in his objections to the Court's earlier findings and recommendations.[3] (ECF No. 28.) Accordingly, the Court will address the issue of whether Plaintiff's first amended complaint contains a viable First Amendment retaliation claim.

Plaintiff is a federal prisoner proceeding under Bivens, the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250 (2006). To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause). The Supreme Court has recently made clear that "expanding the Bivens remedy is now a disfavored judicial activity," and it has therefore "consistently refused to extend Bivens to any new context or new category of defendants." Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017) (citations omitted).

The first step in determining whether to extend a Bivens remedy is to determine "whether the claim arises in a new Bivens context, i.e., whether the case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court]." Id. at 1864. "[A] case can present a new context for Bivens purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous Bivens cases." Id.

---

[3] He also raises the issue of retaliation in his opposition to Defendants' motion for summary judgment.

9

Here, the constitutional right at issue differs from that recognized in prior Supreme Court cases. As stated, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments, never in a First Amendment claim. See Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."). But see Iqbal, 556 U.S. at 675 ("[W]e assume, without deciding, that respondent's First Amendment claim is actionable under Bivens."). While the Ninth Circuit has previously held that Bivens may be extended to First Amendment claims, Gibson v. United States, 781 F.2d 1334, 1342 (9th Cir. 1986) (permitting First Amendment retaliation claim under Bivens); Moss v. U.S. Secret Serv., 572 F.3d 962, 967 n.4 (9th Cir. 2009) (noting Bivens extends to First Amendment damages claims), it has recently revisited this question in light of Abbasi, see Vega v. United States, No. 13-35311, 2018 WL 740184, at *5 (9th Cir. Feb. 7, 2018) (declining to extend Bivens remedy to First Amendment access to courts and Fifth Amendment procedural due process claims against private employees of residential reentry center). These Ninth Circuit cases are not controlling. Under Abbasi, the relevant question is whether the Bivens context differs meaningfully from cases decided by the Supreme Court. See Abbasi, 137 S. Ct. at 1859, 1864.

Where a claim presents a new Bivens context, the Court must consider whether special factors counsel against extension of Bivens into this area. This inquiry recognizes that the decision to authorize damages suits is most often left to Congress. Id. at 1848. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. Id. at 1858.

"The existence of alternative remedies usually precludes a court from authorizing a Bivens action." Id. at 1865. Here, Plaintiff has alternative remedies available to him

10

through the Bureau of Prisons administrative grievance process, federal tort claims under the FTCA, habeas corpus claims under § 2241 (if the claim would spell speedier release), and Bivens claims to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens. See Vega,, 2018 WL 740184, at *6 (availability of administrative remedies and tort claims counseled against extending Bivens remedy); Buenrostro v. Fajardo, No. 1-14-CV-00075-DAD-BAM-PC, 2017 WL 6033469, at *2-*4 (E.D. Cal. Dec. 5, 2017) (declining to infer Bivens remedy for First Amendment retaliation claim).

Additionally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Abassi, 137 S. Ct. at 1865. As noted by the Supreme Court:

> Some 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to Bivens suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Id. (internal citations omitted).

In passing the Prison Litigation Reform Act of 1995 (the "PLRA"), Congress "placed a series of controls on prisoner suits … designed to prevent sportive filings in federal court." Skinner v. Switzer, 562 U.S. 521, 535-36 (2011). Congress did so with the intent to "reduce the quantity of inmate suits." Jones v. Bock, 549 U.S. 199, 223 (2007). Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim.

For the foregoing reasons, the Court should find that the special factors analysis dictates hesitation in applying Bivens to this context, and it should decline to find an implied Bivens damages cause of action for First Amendment retaliation. These deficiencies are not subject to cure, and these claims should be dismissed.

### 4. Conspiracy

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983, and it does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989). However, "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1302 (9th Cir. 1999). Therefore, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id. at 1301.

Plaintiff's conspiracy claim lacks specificity. It is based solely on Plaintiff's speculation and lacks a factual basis. Accordingly, it should be dismissed.

### 5. Inmate Appeal Process

Plaintiff's claim against Mr. Tyson concerns this Defendant's responses to Plaintiff's administrative grievance, but a Defendant's actions in responding to an inmate appeal, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman,

259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10. Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495.

Notably, Plaintiff does not claim that Mr. Tyson had the authority and opportunity to order treatment for Plaintiff's BCC. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); Grant v. Cate, 2016 WL 7116714, at *8 (E.D. Cal. Dec. 7, 2016) ("[A]n individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it.") (citing Jett) Plaintiff's pleading, in fact, suggests that Mr. Tyson's involvement in the processing of Plaintiff's inmate appeal began on or around August 2016, well after the March 2016 surgery to remove the BCC.

For these reasons, Plaintiff's allegations against Mr. Tyson as related to the inmate appeals process are insufficient to state a claim and should be dismissed.

### 6. Access to Courts

The right of access to court is limited to interference with direct criminal appeals, habeas petitions, and civil rights actions, not inmate grievances. See Lewis v. Casey, 518 U.S. 343, 354 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 413-15 (2002). For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-14), *overruled on*

*other grounds by* Hust v. Phillips, 555 U.S. 1150 (2009).

To have standing to bring this claim, Plaintiff must allege he suffered an actual injury. Lewis, 518 U.S. at 351-52; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). To succeed, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous claim attacking a conviction, sentence, or conditions of confinement. Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 353 & n.3. Plaintiff need not show that he would have been successful on the merits of his claims, but only that the claims were not frivolous. Allen v. Sakai, 48 F.3d 1082, 1085-86 & n.12 (9th Cir. 1994).

To the extent Plaintiff's First Amended Complaint can be construed as bringing a claim against Mr. Tyson for violating Plaintiff's right of access to the courts, the claim is premature since Plaintiff has not alleged actual injury. That is, Plaintiff has not yet been denied an opportunity to bring the claims asserted in this action as a result of Mr. Tyson's conduct. Accordingly, any access of court claim asserted against Mr. Tyson should be dismissed for failure to state a claim.

### 7. Federal Tort Claims Act

Plaintiff states that he would like to bring claims for the intentional infliction of emotional and physical distress. The Court previously analyzed these claims under the California Government Claims Act. However, the proper analysis is whether Plaintiff has stated a claim under the Federal Tort Claims Act ("FTCA"), which provides a cause of action for torts committed by federal employees.

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 510 U.S. 471, 475 (1994). "The FTCA waives the federal government's sovereign immunity for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred." Green v. United States, 630 F.3d 1245, 1249 (9th Cir. 2011). The FTCA provides that district courts have exclusive jurisdiction over civil actions against

the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [federal] Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674.

The United States is the only proper defendant under the FTCA. FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998); Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). "A claim against [a federal agency] in its own name is not a claim against the United States." Kennedy, 145 F.3d at 1078. Nor is an agency a proper defendant under the FTCA. Craft, 157 F.3d at 706 (citing Shelton v. United States Customs Serv., 565 F.2d 1140, 1141 (9th Cir. 1977)).

Under the FTCA a claim must be filed with the appropriate federal agency within two years of its accrual and suit must be commenced within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b). This administrative exhaustion requirement is mandatory and jurisdictional. Valadez-Lopez v. Chertoff, 656 F.3d 851, 855 (9th Cir. 2011) (quoting Brady v. United States, 211 F.3d 499, 502 (9th Cir. 2000)). Exhaustion must be affirmatively alleged in the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980). Even in a pro se case, "[a] district court may dismiss a complaint for failure to allege this jurisdictional prerequisite." Id., at 640; see also Mendoza v. United States, 661 F. App'x 501, 501-02 (9th Cir. 2016). "The FTCA is a limited waiver of sovereign immunity, authorizing suit against the United States for tortious performance of governmental functions in limited cases," Bibeau v. Pacific Northwest Research Foundation, Inc., 339 F.3d 942, 945 (9th Cir. 2003), and the waiver "is strictly construed in favor of the sovereign . . . ." Craft, 157 F.3d at 707.

Here, Plaintiff fails to allege the facts necessary to confer jurisdiction over these claims. He brings claims against individual defendants, not the United States. In an FTCA claim, the United States is the only proper defendant. Kennedy, 145 F.3d at 1078. Additionally, Plaintiff has not alleged exhaustion in his complaint. See Gillespie, 629 F.2d

15

at 640. Exhaustion under the FTCA differs from the prison's general administrative appeal process, see 28 C.F.R. § 14.2, and Plaintiff has not presented any allegations in this regard. Thus, this Court lacks jurisdiction to consider this claim; the claim should be dismissed.

### 8. Injunctive Relief

Plaintiff additionally seeks injunctive relief in the form of adequate medical care. (ECF No. 11.) .

Federal courts are courts of limited jurisdiction. The pendency of this action does not give the Court jurisdiction over prison officials in general or enable it to provide relief that is not the subject of the operative complaint. Summers v. Earth Island Institute, 555 U.S. 488, 492-93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the cognizable legal claims upon which the action proceeds. Summers, 555 U.S. at 491-93; Mayfield, 599 F.3d at 969. A court should not issue an injunction when the relief sought is not of the same character as that sought in the underlying action and the injunction deals with a matter lying wholly outside the issues in the underlying action. De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945). Moreover, while "[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; *it may not attempt to determine the rights of persons not before the court.*" Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) (emphasis added).

Here, Plaintiff is seeking injunctive relief against individuals not before the court and dealing with matters outside the issues in the underlying action. Plaintiff is currently in custody at the Federal Correctional Institution – Phoenix, and his claims concern his medical treatment and conditions of confinement at USP-Atwater. Plaintiff is not in the custody of the named Defendants and it would not appear that any Defendant could take any action with respect to Plaintiff's medical care. Therefore Plaintiff's request for injunctive relief is moot and on that basis should be dismissed.

**IV. Conclusion**

For the reasons stated above, the Court's January 20, 2018, findings and recommendations (ECF No. 21) are vacated. Furthermore, IT IS HEREBY RECOMMENDED that:

1. Plaintiff continue to proceed on an Eighth Amendment medical indifference claim against Defendants Peikar, Mettri, Fuentes-Arce, and Tyson, as stated herein;
2. Plaintiff's FTCA claims be dismissed without prejudice for failure to exhaust; and
3. Plaintiff's remaining claims be dismissed with prejudice for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __February 15, 2018__  /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE