# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL FREE,<br><br>        The plaintiff,<br><br>    v.<br><br>DR. NADER PEIKER, et al.,<br><br>        The defendants. | Case No.: 1:17-cv-00159 AWI JLT<br><br>FINDINGS AND RECOMMENDATION TO GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 19)<br><br>ORDER DENYING MOTION TO ENFORCE SUBPOENA (Doc. 72) |

It is undisputed that the plaintiff did not exhaust his administrative remedies in this action. He asserts the remedies were made unavailable to him. After conducting an evidentiary hearing, the Court finds the administrative remedies were available to the plaintiff and, consequently, the Court recommends the motion be **GRANTED**.

**I.    Exhaustion under Prison Litigation Reform Act**

Under the PLRA, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S.Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be

1

exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90. To properly exhaust, an inmate must comply with the grievance procedures rule and deadlines of the institution where he is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007).

Under the PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (quoting Griffin v. Arpaio, 557 F.3d at 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, at 1120. The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Jones, 549 U.S. at 219 (citations omitted). The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp, 623 F.3d at 824 ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").

The Ninth Circuit has recognized that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." See Sapp, 623F.3d at 824; Nunez, 591 F.3d at 1226. An inmate may be excused from exhaustion if he establishes (1) that he filed a grievance that, if pursued through all levels of administrative appeals, would exhaust the claim, and (2) that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. Sapp, 623 F.3d at 823-24.

Prison officials may not render the appeals process unavailable through error or misconduct and then take advantage of the prisoner's failure to complete the process. See Sapp, 623 F.3d at 823 (improper screening and/or processing of an inmate's administrative grievance "renders administrative remedies 'effectively unavailable'") (internal citations omitted). Exhaustion of administrative

remedies may be deemed complete, despite the inmate's failure to comply with a procedural rule, if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., Id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

## II. Federal Bureau of Prisons Exhaustion Rules

The Bureau of Prisons has established an administrative remedy procedure through which an inmate can seek review of any complaint regarding any aspect of his imprisonment including security concerns. See 28 C.F.R. § 542.10; Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010). As a first step, the prisoner ordinarily must seek to resolve the issue informally with prison staff using a BP-8 form. 28 C.F.R. § 542.13(a). If the informal complaint does not resolve the dispute, the prisoner can then make a formal administrative remedy request at the institution of confinement using a BP-9 form. 28 C.F.R. § 542.14(a). The prisoner must submit the BP-9 within 20 calendar days following the date of the event which gave rise to the grievance, except where the prisoner demonstrates a valid reason for delay. 28 C.F.R. §§ 542.14(a), (b).

If the warden denies the BP-9 request, the prisoner may appeal to the Regional Director using a BP-10 form. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1219. The BP-10 must be submitted within 20 calendar days of the date the warden responded to the BP-9, unless there are valid reasons for the delay. Id.; 28 C.F.R. § 542.14(b).

If the prisoner is not satisfied with the Regional Director's response, he may appeal to the BOP General Counsel using a BP-11 form. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1219-20. The prisoner must submit the BP-11 within 30 calendar days of the date of the Regional Director's response to the BP-10, unless there is a valid reason for delay. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1220.

## III. Relevant Factual Background

### A. Administrative Remedy Request No. 842903

On November 16, 2015, the plaintiff submitted his BP-8, which was numbered 842903. (Doc. 19-3 at 15.) The grievance stated, "I need surgery to remove skin cancers" and indicated that since January 10, 2014, the defendants Mettri and Peikar "have promised me treatment each week since then and have done nothing." *Id.*

The plaintiff then filed a BP-9 and continued to request treatment for the skin cancers on his face neck, right cheek, ears, and nose. (Id. at 18.) He stated that he was being denied treatment and was suffering pain and disfigurement. *Id.* The BP-9 was denied and the response indicated that a review of the plaintiff's records showed he had received treatment for his lesions and was currently scheduled for an appointment with a specialist. (Id. at 19.)

The defendants state that the plaintiff did not file a request to any further level of review for Remedy Request No. 842903. (Id. ¶ 10.) The plaintiff disputes this and states that he provided his unit manager, Mr. Tyson, a BP-10 for the second level for review, but this appeal was never processed. (Docs. 23 at 2, 25 at 3-4.) In this purported appeal, the plaintiff indicated that he was being denied treatment. (Doc. 25 at 26.) The plaintiff further stated, "Being sent to 'Utilization Committee' to be approved for 'dermatology consult' to 'general surgeon' to 'otolaryngology' is causing me pain and suffering and horrible disfigurement." *Id.* The plaintiff stated that the actions and inaction of the defendants Peikar and Mettri were making him suffer needlessly. *Id.*

**B.     Administrative Remedy Request No. 875480**

On August 6, 2016, the plaintiff submitted a BP-8, which was numbered 875480. (Doc. 19-3 at 22.) The plaintiff requested $1,000,000 in compensation for pain and disfigurement. *Id.* The plaintiff's complaint indicated that he had "repeatedly requested treatment and was told, each week for more than two (2) years: 'Be patient, you are scheduled for treatment,' by Ms. Mettri, Dr. Peikar or others." *Id.* This request was denied and he received a response that provided a chronology of his treatment. (Id. at 23-24.)

On September 9, 2016, the plaintiff submitted a BP-9. (Id. ¶ 12.) The plaintiff reiterated his request for $1,000,000 in compensation for pain and disfigurement. (Id. at 27.) The plaintiff's request was rejected immediately because "compensation is sought thru the tort program. Request a tort form from your unit." (Id. at 25.)

The plaintiff claims he never received this rejection. (Doc. 25 at 8.) He indicates that he followed up with emails requesting updates but did not receive any response. Id. The plaintiff further states that Tyson told him that his BP-9 was pending and that "it is futile to ask for money." (Id. at 9.) The plaintiff did not file a tort form or a request to any further level of review. (Doc. 19-3 ¶¶ 13-14.) He states that he inquired about this appeal and that Tyson that he should continue to wait for a response. (Doc. 25 at 8-9.)

**IV.    Analysis**

In their motion for summary judgment, the defendants argue that the plaintiff did not exhaust his administrative remedies as required by the PLRA and, indeed, the plaintiff agrees that he did not pursue any grievance to the final level.  However, Mr. Free argues that the process was made unavailable to him because exhaustion was futile because no monetary relief could not be afforded him and because he did not receive a response from prison officials and was misled into believing the appeal was being processed.

First, the fact that monetary compensation was not an available remedy does not indicate that remedies were effectively unavailable. See Booth, 532 U.S. at 739 (holding that procedural exhaustion is required "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"). Mr. Free was required to exhaust "irrespective of the forms of relief sought and offered through administrative avenues." Id. at 741 n.6.

Second, the plaintiff states that after he received the response to the BP-9 in number 842903, he gave Tyson his BP-10 but never received a response. The BOP database does not contain any entry for this appeal. (See Doc. 19-3.) The copy of this purported appeal supplied by the plaintiff does not have a receipt stamp or anything else to indicate it was received. (See Doc. 25 at 26.) Thus, there is a dispute of fact as to whether the plaintiff attempted to pursue this grievance.

At the evidentiary hearing, Mr. Tyson testified that he *does* on occasion see BP-10s inmates wish to submit but only because they need postage.  He had no memory of this occurring with Mr. Free but produced the stamp log which demonstrates Mr. Free did not seek postage.  In addition, Mr. Tyson said that on those occasions when an inmate needs postage for a BP-10, he provides the postage, has the inmate sign the log acknowledging the postage and then the inmate must deposit it in

1 the mail receptacle for mailing; Mr. Tyson does not mail it for the inmate. Tyson testified that he does
2 this to ensure that there can be do claim that he failed to mail the appeal. Likewise, he testified that if
3 an inmate were to provide him a BP-10, he'd give it right back because he does not mail BP-10s for
4 inmates.

In his filings, Mr. Free asserted that he gave Mr. Tyson the BP-10 because Mr. Tyson told him to do so. (Doc. 25 at 3) He said that he requested updates on the status of the appeal and Tyson told him to "be patient" and to "'wait for the Region's Response' adding that such a response is absolutely necessary to be attached to any further appeal (BP-11 to the Central Office) and 'don't worry, it is still pending we are still considering your request for surgery.'" Id.

The Court finds this very difficult to believe. First, Mr. Tyson's testimony was quite credible that he would not accept a BP-10 for mailing exactly for the reason at issue here—he does not want to be accused of failing to mail an inmate's appeal. Also, it was clear that Mr. Free never sought postage from Mr. Tyson—and Mr. Free does not claim that he sought postage—since the log does not reflect that Mr. Free obtained postage. The Court has no evidence that Mr. Tyson had any reason to want to impede Mr. Free from submitting a BP-10 or had any bias against him or any reason to wish to thwart Mr. Free from receiving medical care.

Second, the Court finds it difficult to accept that the prison staff, no matter when they addressed Mr. Free's concerns and no matter whether they related to the timeliness of his medical treatment or the status of his remedy request, invariably used the exact same language, "Be patient." In addition, it seems noteworthy that Mr. Free *knew* that the BP-10 *had* to be mailed to the Regional Director and not given to local staff. His statement that he was obligated to comply with staff members' instructions as explanation for why he gave the BP-10 to Tyson rather than mailing it to the Regional Director, does not ring true especially because he received the medical treatment he sought after this. If Tyson was trying to prevent the medical treatment, seemingly, preventing an appeal was an ineffective way of doing this. Also, Mr. Free kept a copy of the BP-10 that he purportedly gave to Tyson. He could have easily mailed it to the Regional Director in addition to giving it to Tyson, since he knew that this was his obligation under the law.

It appears to the Court that Mr. Free *chose* not to proceed with a BP-10 once he obtained the

medical care at issue, which is a very reasonable decision. However, the Court does not believe his claim that he did not proceed because he believed that filing a BP-11 without the response from the BP-10 would result in a rejection. Rather, this appears to the Court to be after-the-fact rationalization. In the previous Findings and Recommendations that were withdrawn, the previously assigned Magistrate Judge, without holding an evidentiary hearing, relied heavily on Arnett v. Shojaie, 2011 WL 5434417, at *11 (C.D. Cal. Nov. 8, 2011), which held that without a receipt, the inmate would not know the deadline for pursuing his next appeal. First, here, the Court does not accept that the BP-10 was submitted to Tyson. Second, even if it accepted this position, the Court rejects the rationale of Arnett in this instance. Mr. Free does not claim that he submitted the BP-10 in a manner that complies with the law. Thus, his action ensured that the BP-10 could not have been logged in the SENTRY system, because he failed to provide it to the Regional Director. Finally, notably, § 542.17 deadlines apply only when an appeal is accepted. The failure to receive a receipt is akin to a rejection and the inmate should act according to § 542.17. Any other requirement would encourage inmates to *claim* to submit appeals, without actually doing it, to avoid arguments raising exhaustion.

On the other hand, the Court does not doubt that Mr. Free did not have the BP-9 response in remedy request 875480[1]. (PX 1) Like Mr. Free, the Court appreciates that he would not continue to request information about the response if he had received it. Mr. Free testified he knew he was supposed to have received a receipt and did not. He knew he could look at the Administrative Remedy Index, though he did not know the official name for the Index. He said that, though he never asked to see the Index, he asked "What is the status?" which meant to him, that he was asking to see the index. He said that in response, he was told to "be patient." Notably, at the hearing, Mr. Free clarified that he submitted his BP-9 in 875480 to Mr. Boudreaux on August 31, 2016. He said that in early September 2016, he inquired of Tyson/Boudreaux[2] as to the status of the BP-9. He said they told him to wait for the response. Notably, at that time, the response would not be overdue for another

---

[1] The Court does not know whether it was not delivered or misdelivered by prison staff or mislaid by Mr. Free without his noting what it was. However, it is apparent Mr. Free did not know the content of the response at the relevant time period.
[2] Mr. Free spoke as though he posed his questions to Mr. Tyson and Mr. Boudreaux collectively. This seems very unlikely to the Court. Notably, he made a similar attribution as to his November inquiry though his email was directed only to Mr. Boudreaux and, it appears, he received a response from Mr. Boudreaux some time before December 6, 2016. (PX1)

7

week or two.

This testimony is different from the information he included in his opposition to the motion for summary judgment. (Doc. 25 at 9) In his written opposition, he stated that his first inquiry was in November 2016 and when he sent an email to Mr. Boudreaux. Id. Mr. Free testified he was told to "be patient." Finally, on December 6, 2016, he emailed Mr. Tyson and noted he had asked Mr. Boudreaux about his BP-9, but was asking Tyson to respond to that earlier email and to notify him whether Dr. Peikar was still working at USP Atwater. Mr. Tyson testified that he referred the email to Health Services because he did not know whether Dr. Peikar still worked at the prison.

Clearly by November 2016, Mr. Free knew the response to the BP-9 was overdue. Indeed, the response was due by late September. Being told in early September before the response was due or in November to "be patient" does not explain why he failed to submit his BP-10 in late September or October 2016.

The Court does not accept Mr. Free's explanation that the BP-10 would be automatically rejected if the response to the BP-9 was not attached. His citation to Glover v. McClintock, 2013 WL 4854349, at *2 (D. Ariz. Sept. 11, 2013), report and recommendation adopted, No. CV-12-00689-TUC-CKJ, 2014 WL 171920 (D. Ariz. Jan. 15, 2014), simply does not support that claim. In Glover, the inmate submitted his BP-11 after not receiving a response to his BP-10. Id. at 2. The BP-11 was rejected due to the inmate's failure to attach the response to the BP-10. Id. However, the Unit Manager provided the inmate a memo indicating that administrative delays caused the inmate to not receive the rejected in a timely fashion. Id. at *5. The inmate then re-submitted his BP-11 with the memo and the response to the BP-10 (he had received the response to the BP-10 in the interim). Id. However, when he again failed to receive a timely response to the BP-11, he initiated his legal action. Id. Upon these facts, the trial court determined the inmate had exhausted his administrative remedies and the prison official did not challenge this determination. Id.

Though Mr. Free clearly understands a portion of the facts of Glover—that the BP-11 was rejected because the BP-10 was not attached—he fails to appreciate the bigger picture. First, notably, because the inmate in Glover completed the process—by filing the BP-11 when the response to the BP-10 was overdue—the court determined that he exhausted the administrative remedies. Second,

what happened to one inmate in Arizona in 2012 cannot render the relief provided by 28 CFR 542.18[3] void. Even if the mistake in rejecting the BP-10 has been made many times, the fact that errors are made by those handling the responses at the various levels must be expected; people make mistakes. However, errors on different occasions as to different claims and different inmates cannot and does not make the remedy unavailable.

Mr. Free admitted that on every other occasion when he submitted remedy requests—he has submitted remedy requests at the various levels a total of 23 times—he had invariably received responses to his remedy requests. Thus, it is unclear why he chose to decide the process was futile because another inmate's BP-11 was rejected as incomplete. It is equally unclear why Mr. Free ignored the remainder of the facts of Glover, that the trial court found the inmate had exhausted his administrative remedies *because* the inmate continued with the process despite the wrongful rejection. For obvious reasons, therefore, the Court does not find Glover to be particularly helpful here.

In some circumstances, prison officials' failure to respond to a grievance may demonstrate that no administrative remedy is available. See Sapp, 623 F.3d at 822 (dictum; citing Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2004)); Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (delay in response to grievance, particularly a time-sensitive grievance, may show unavailability of administrative remedy). However, BOP regulations provide that, if "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, the failure of BOP officials to respond on time does not, by itself, cause an inmate harm or prevent him from accessing the administrative grievances system. See Schwarz v. Meinberg, 2016 U.S. Dist. LEXIS 149237, at *36 (C.D. Cal. Oct. 11, 2016) (finding that lack of response by BOP officials did not render remedies effectively unavailable); Jackson v. Stringer, 2017 U.S. Dist. LEXIS 121069, at *9-10 (C.D. Cal. May 5, 2017) (finding that the lack of response to BP-9 did not render remedies effectively unavailable because "[p]laintiff could have continued to pursue his remedies by filing a BP-10 form, but he did not."); Douglas v. Johns, 2011 WL 2173627, at *2 (E.D.N.C. June 2, 2011) (Regional Director's

---

[3] "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18

9

failure to respond to a grievance did not excuse exhaustion; under section 542.18 "plaintiff should have treated the lack of response as a denial of his request, and was obligated to appeal that denial to the next level of the administrative process in order to properly exhaust his remedies") Accordingly, Defendant's motion for summary judgment should be **GRANTED**.[4]

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within 14 days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 28, 2018**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

---

[4] In addition, Mr. Free's motion to "enforce the subpoena" (Doc. 72) is **DENIED**. First, the Court did not issue any subpoenas for Mr. Free (*See* Docs. 65, 69) Second, accepting as true that a December 2016 email was not produced, the Court finds this email would not impact the outcome.

10